G2bdlics

Sentence

```
 1    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
 2    ------------------------------x

 3    UNITED STATES OF AMERICA,              New York, N.Y.

 4              v.                           15 Cr. 0302(JGK)

 5    DON LICHTERMAN,

 6                Defendant.

 7    ------------------------------x

 8
                                            February 11, 2016
 9                                          2:47 p.m.

10
      Before:
11
                         HON. JOHN G. KOELTL,
12
                                            District Judge
13

14                          APPEARANCES

15    PREET BHARARA
           United States Attorney for the
16         Southern District of New York
      BY:  SHAWN CROWLEY
17         Assistant United States Attorney

18    THE LAW OFFICES OF JEFFREY LICHTMAN
           Attorneys for Defendant
19    BY:  JEFFREY B. LICHTMAN
           JEFFREY BENSON EINHORN
20

21

22

23

24

25
```

G2bdlics
Sentence

1        THE CLERK:  United States of America versus Don

2   Lichterman.

3        Will all parties please state who they are for the

4   record.

5        MS. CROWLEY:  Good afternoon, your Honor.  Shawn

6   Crowley for the government.

7        THE COURT:  Good afternoon.

8        MR. LICHTMAN:  Jeffrey Lichterman and Jeffrey Einhorn

9   for the defendant.  Good afternoon, your Honor.

10        MR. EINHORN:  Good afternoon, your Honor.

11        THE COURT:  Good afternoon.

12        I note that the defendant is present.

13        I've received the presentence report prepared

14   September the 8th, 2015, revised October 2, 2015.  I received

15   the defense submission dated January 8, 2016, and the

16   government's submission dated January 18, 2016.

17        At the outset, there are some objections which I think

18   should be dealt with at the outset.

19        In paragraphs 27 and 28, I will add in paragraph 28

20   that "This conviction was vacated by order dated October 15,

21   2015."

22        Government agree?

23        MS. CROWLEY:  Yes, your Honor.

24        THE COURT:  In paragraphs 31 and 32, I will add in

25   paragraph 32, "This conviction was vacated by order dated

G2bdlics

Sentence

1    October 15, 2015."  Government agree?

2              MS. CROWLEY:  Yes, your Honor.

3              THE COURT:  In paragraph 69, I will change $31,698,000

4    to $31,698.  Government agrees?

5              MS. CROWLEY:  Yes, your Honor.

6              THE COURT:  OK.  Mr. Lichtman, have you reviewed the

7    presentence report, the recommendation and the addendum and

8    discussed them with the defendant?

9              MR. LICHTMAN:  I have, your Honor.

10             THE COURT:  Other than I've already gone over, do you

11   have any objections?

12             MR. LICHTMAN:  No, your Honor.

13             THE COURT:  I will listen to you for anything you

14   would like to tell me in connection with sentence, any

15   statement you would like to make, anything at all.

16             MR. LICHTMAN:  Your Honor, may I approach the lectern?

17             THE COURT:  Sure, by all means.

18             MR. LICHTMAN:  Thank you.

19             Your Honor, this is actually a very strange and

20   frustrating case for us; it has been since our entry into the

21   case.  I have been doing this for probably 25 years now, I

22   believe, and at some point you start thinking that you've seen

23   it all and you never have.  Just when you think you have seen

24   it all, something else comes up in this business that sort of

25   shocks you.

G2bdlics
Sentence

1          The case itself, the facts of it, it was such an

2     utterly avoidable situation, and you can say that about almost

3     any criminal case but this one especially.  This was a simple,

4     copyright infringement case in which Mr. Lichterman sent out a

5     forged, very obviously poorly drawn order to opposing counsel

6     because of his anger at having his litigants, his opponents,

7     the plaintiffs speaking poorly about him online.  And then he

8     sent out some emails from an attorney supposedly trying to get

9     this poorly drawn, obviously fake order enforced, and here's

10    where we are.

11              This is something that --

12              THE COURT:  In the course of that, he was warned by

13    the --

14              MR. LICHTMAN:  Yes.

15              THE COURT:  -- judge that this could well be a federal

16    offense.

17              MR. LICHTMAN:  Yes.

18              And the point of the conduct here is that there was no

19    chance it could have succeeded.  Obviously, it couldn't

20    succeed.  And when we got the case, our initial thought was,

21    well, my God, you clearly couldn't see beyond right what was in

22    front of your nose, which was the bad things that were being

23    said about him online.  He had a very angry -- violently angry

24    reaction, and the following steps occurred that he committed

25    and here we are.  And it was shocking because there was clearly

G2bdlics
Sentence

 1   no reflection to see what would happen when they get these

 2   obviously poorly drawn orders with attorneys that know what

 3   orders actually look like.  There was never any effort.

 4        But if I can, I want to go back to our dealings with

 5   Mr. Lichterman and how these two things intersected, his

 6   conduct in the case and what we learned about him at the time.

 7        When we first began representing him, he struck me as

 8   a highly intelligent, curious, interested client/defendant.  We

 9   had wonderful discussions about the law and about the case, and

10   our representation was going swimmingly for a few weeks, I

11   suppose.  Then all of a sudden we started getting these

12   bizarre, angry emails, accusatory, out of nowhere.  And I'm not

13   saying this certainly, your Honor, to demean the client but to

14   give you some context as to what happened here.

15        We would try to talk him down.  I talked to his

16   mother, tried to find out what is going on here.  It just

17   seemed very strange that an otherwise intelligent, competent,

18   capable man was coming up with the most bizarre accusations.

19   And as I said, Judge, I've been doing this for 25 years.  I've

20   represented cartel leaders.  I've represented organized crime

21   heads of family.  I've represented every type of violent

22   criminal that there is.  I've never experienced something like

23   this in 25 years, Judge.  The anger and the reaction was almost

24   vulcanic and out of nowhere, and there was nothing based in

25   reality where it was coming from.

G2bdlics
Sentence

1          And Mr. Einhorn and I were treading carefully at this

2    point.  We didn't really know what to do.  We didn't know

3    should we stay on the case.  Was it something that we should

4    bring to your Honor's attention?  We didn't know what to do.

5    I've never had a situation like this because as quickly as the

6    outbursts would come, they would then die back down.  And just

7    when I thought maybe this is something I need to go to the

8    Judge with, he would come back down to earth and he would be

9    fine.

10          So at this point, as we were, as I've said, treading

11   carefully with him, I asked Mr. Lichterman -- which I thought

12   was a question that I thought I would get a completely

13   different answer -- I said have you ever seen a psychiatrist

14   before, and he said no.  He's 51 years old now.  Never.  I

15   said, look, I was a psychology major in college but you almost

16   get more psychology training as a criminal defense lawyer than

17   anything I ever could have learned in school.  I said, I have

18   to tell you, I think you're bipolar because you just seemed

19   like Exhibit A of what a bipolar personality should be.  And

20   clients have all sorts of psychological afflictions but never

21   as black and white and as extreme as I have seen with

22   Mr. Lichterman.

23          So we asked him, you know, you should go see a

24   psychiatrist.  He resisted and he said, no, there is no reason.

25   Why do I need to go?  I'm fine.  And as I said, we almost quit

Sentence

1    the case a few times.  We were going to come to you and explain

2    the whole situation.  And finally we insisted.  We told him

3    that you have to see a psychiatrist.  You have to because we're

4    not getting the full picture of what you are here.  The letters

5    that we were getting in on his behalf were wonderful.  You've

6    read the letters.  They're extraordinary, I would say.  So we

7    insisted that he get psychiatric help, and we felt bad for him

8    because he was suffering to a degree that we could see -- he

9    couldn't see it but anybody around him could see the bizarre

10   tremendous amount of suffering that he was going through.  And

11   he went to see a psychiatrist and all of a sudden, just like

12   that, everything changed.

13          And the thing that was frustrating for us was that we

14   were having this horrible behavior from him and then we were

15   getting these letters and we were seeing this life of decency,

16   where he's a kind friend to all the people around him, he's not

17   just somebody who cares about animals but someone who goes the

18   extra yard, rescues animals.  I'm an animal lover but, Judge,

19   I'm not looking to go across the country and preventing animals

20   from being gassed to death.  The level and the extent of his

21   interest and care for all things vulnerable was extraordinary

22   to us.  The Special Olympics, where he is a coach of children

23   and adults with special needs, all sorts of charitable groups,

24   and, as I said, the one common denominator is that he is

25   treating and caring for people that are vulnerable like him.

G2bdlics

Sentence

1        So when went to the psychiatrist and immediately --

2   almost immediately the psychiatrist -- we had gotten permission

3   to speak to him -- and he said, of course he's bipolar.  You

4   know, how could this have gone untreated -- he's 51 years old,

5   his entire life?  And that's what the psychiatrist asked us.

6   He's like this is eminently treatable.  We give him medication

7   and he's fine.  51 years, Judge, and he's been living with

8   this.

9        So he began the medication.  He began therapy.  He's

10   seeing actually two psychiatrists at this point and also a

11   clinical social worker, a licensed clinical social worker.  And

12   almost his entire disposition changed on a dime.  From someone

13   that had highs and lows and all -- everybody in his life was

14   working on egg shells around him -- all of a sudden, a guy who

15   has flattened out and it was just like that.

16        And as I was getting ready for the sentencing, I was

17   thinking back to just the wreckage of this man's life because

18   of the failure of anyone to force him -- it wasn't so easy --

19   to force someone to go to a psychiatrist, I suppose, when they

20   don't want to.  And you read about how his upbringing and how

21   he learned about his father, who we thought was his father was

22   not his real father.  I don't know if that had anything to do

23   with it.  I don't know if that's the case, but it was certainly

24   a strange thing to learn when you're about 12 years old that

25   your father is actually your adopted father.

Sentence

1    But I think about the wreckage of this life that had

2   he gone to a psychiatrist perhaps when he was 10 or 11 or 12

3   years olds when he started exhibiting these signs, maybe

4   everything changes.  Maybe we're not here -- probably we're not

5   here.  He's 51 years old.  He's been through job after job

6   after job after job because he has had difficulty getting along

7   with people.  What a shock?  Certainly anybody that's had any

8   exposure to him will all say -- everyone says the same thing --

9   he would have a family by now.  Now he's living with his

10   parents and he's been completely devastated.  This is the

11   culmination.  This is the end.

12    This is really a tragic story, a life that was

13   destroyed by mental illness.  But it ends in this courtroom.

14   And, you know, I don't know how many times I've been in courts

15   and I've said to judges, well, you know, this was a wake-up

16   call, your Honor, and I suppose this is -- this is the one time

17   that I can really say it and it's not advocacy.  It really

18   isn't.  That if he hadn't done this, if he hadn't gotten

19   arrested, if we didn't end up in front of you, if we didn't

20   have to fight for him at a sentencing, maybe this goes on

21   forever and his life just goes on 'til the end with this anger,

22   with this rage, with this dysfunction, with this mental

23   disease.  And that's what it is, it is a mental disease.  So in

24   a way he's lucky that he's here today.

25    Whatever is going to happen to him today, your

G2bdlics
Sentence

1  Honor -- and, again, I say this with all respect -- this man

2  has been punished and has suffered in ways that are just

3  unimaginable, for 40 years.

4       So what I'm asking for today, your Honor, because I

5  strongly believe that this is not the sort of crime for him

6  that necessarily needs to be deterred, because I firmly believe

7  that it was the disease that had a large part to do with this,

8  and I don't have the exposure to him for 40 years but I've had

9  exposure for a couple of years now and I've seen the highs,

10  I've seen the lows, and I've never seen this level, since we've

11  known him, where he's steady, he's completely engaging, he's

12  calm.  It never existed.  He's never seen it.  His family has

13  never seen it.

14       And I would respectfully request that for a crime that

15  was not done out of greed, there was nothing venal about this,

16  it just was simply a violently angry reaction to somebody

17  talking smack about him on the Internet that caused us to end

18  up where we are today, and I would ask your Honor, because of

19  all of that, and because of the fact that this disease was

20  untreated for so long, that we get a noncustodial sentence, a

21  probationary sentence, with the condition that he continue the

22  mental health treatment that he's getting, that he continue the

23  medication, that he continue whatever the doctors say he needs

24  to do, and I don't think we'll have a problem with him because

25  something that he fought us at the beginning he now happily

G2bdlics
                              Sentence

1   embraces because he finally has some peace after an entire

2   lifetime of, frankly, horrors.

3          Thank you, your Honor.

4          THE COURT:  Thank you, Mr. Lichtman.

5          Mr. Lichterman, have you reviewed the presentence

6   report, the recommendation and the addendum and discussed them

7   with your lawyer?

8          THE DEFENDANT:  Yes, I have, your Honor.

9          THE COURT:  Other than what I've already covered, do

10  you have any objections?

11         THE DEFENDANT:  No, I don't, your Honor.

12         THE COURT:  I'll listen to you for anything that you

13  would like to tell me in connection with sentence, any

14  statement you would like to make.

15         THE DEFENDANT:  Yes.  I appreciate it.

16         THE COURT:  Anything at all you would like to tell me.

17         THE DEFENDANT:  I want to state how much I'm truly

18  ashamed and how truly embarrassed I am by what I've done.  I

19  can easily say that I will never have any troubles with the law

20  again.

21         I would also like to give a personal apology to you,

22  Judge Koeltl, and to the Assistant United States Attorney Shawn

23  Crowley and to the government for using their time.

24         Most importantly, I would like to apologize to Judge

25  McMahon along with Risa Abramson and to the lawyers that were

G2bdlics

Sentence

1    oppressed for making them the victims of my criminal conduct.

2    I meant no disrespect to anyone.  I meant no harm to anyone.

3    And I'm very, very sorry for it.

4              THE COURT:  All right.  Thank you.

5              All right.  Before I call on the government, it

6    occurred to me in going over the sentence and listening to

7    comments today that I should at least raise with everyone.  I

8    asked myself whether there was any reason that I should

9    disqualify myself because the seal that was involved was the

10   seal from one of my colleagues.  I appreciate that in some

11   cases where there are physical threats to other colleagues,

12   judges disqualify themselves.  In this case I never saw a

13   reason to do it.  None of the parties raised an issue with me,

14   and I still don't see any reason.  There is nothing about the

15   facts of this case that influences anything that I do or would

16   do in the case, but I raise it with all of you to see whether

17   all of you agree.

18             MS. CROWLEY:  The government certainly agrees, your

19   Honor.

20             MR. LICHTMAN:  As does the defense, your Honor.

21             THE COURT:  OK.  So now I'll call on Ms. Crowley.  Has

22   the government reviewed the presentence report, the

23   recommendation and the addendum?

24             MS. CROWLEY:  I have, your Honor.

25             THE COURT:  Does the government have any objections

G2bdlics
Sentence

1   other than I've already covered?

2          MS. CROWLEY:  No, your Honor.

3          THE COURT:  I'll listen to you for anything the

4   government would like to tell me in connection with sentence.

5          MS. CROWLEY:  Your Honor, I don't have anything to add

6   beyond what is in the submission that I put in in January and

7   the presentence report.  Unless the Court has questions for me,

8   I will just leave it at that.

9          THE COURT:  No.  Thank you.

10          All right.  I'll place the presentence report, the

11   recommendation and the addendum in the record under seal.  I'll

12   place the parties' submissions to me also in the record under

13   seal.  The parties should review their submissions and to the

14   extent that they haven't, should put them in the record not

15   under seal after they've gone over them to make sure that there

16   is no personal identifying information or confidential medical

17   information.

18          OK.  I adopt the findings of fact in the presentence

19   report except as I've already noted.  Therefore, I conclude

20   that under the current guidelines, the total offense level is

21   12, the Criminal History Category is I, and the guidelines'

22   sentencing range is 10 to 16 months.

23          I appreciate that the guidelines are only advisory and

24   that the Court must consider the various sentencing factors in

25   18 U.S.C. Section 3553(a), and impose a sentence that is

G2bdlics

Sentence

1  sufficient but no greater than necessary to comply with the

2  purposes set forth in Section 3553(a)(2).

3          It is plain that the offense is serious.  The

4  defendant was responsible for using a fraudulent order

5  purportedly signed by a judge and sealed by the Clerk.  The

6  defendant continued to do this after being alerted by the judge

7  that it was a federal crime.  There are mitigating

8  circumstances.  The defendant is suffering from bipolar

9  disorder, which was not diagnosed at the time and likely played

10  a role in the offense.  The defendant is now receiving

11  treatment, and any period of incarceration would interfere with

12  that treatment.  The offense is also a strange offense, because

13  the defendant continued to do it after he was aware that the

14  authorities were alerted to the offense.

15          A guidelines' sentence in this case would call for

16  five months imprisonment and five months home confinement

17  because the sentence is in Zone C.  A sentence that increases

18  the period of home confinement in lieu of incarceration would

19  be a sentence that is sufficient but no greater than necessary

20  to meet the goals of sentencing, particularly to reflect the

21  seriousness of the offense and the need for deterrence.

22          Therefore, in this case, the Court intends to impose a

23  sentence of time served on Count One to be followed by a

24  three-year term of supervised release, with the standard

25  conditions of supervised release in this district and those

15
G2bdlics
Sentence

1    recommended by the Probation Department, together with 10

2    months home confinement, together with electronic monitoring

3    and 100 hours of community service.

4            The Court will impose a fine of $3,000.  The Court

5    will not impose restitution because there is no victim under 18

6    U.S.C. Section 3663.  The Court will impose a $100 special

7    assessment.

8            The sentence is consistent with the factors in Section

9    3553(a) and is sufficient but no greater than necessary to

10   comply with the purposes of Section 3553(a)(2).  It recognizes

11   the seriousness of the offense and the need for deterrence.  On

12   the other hand, there are mitigating circumstances,

13   particularly the defendant's mental condition and the need for

14   continuity of mental health treatment.  Because the downward

15   variance is not substantial, the sentence does not result in

16   unwarranted sentencing disparities.

17           I've explained the reasons for the sentence.  Before I

18   actually impose the sentence, Mr. Lichtman, I'll recognize you

19   for anything you wish to tell me.

20           MR. LICHTMAN:  Your Honor, I would just ask for the

21   home confinement, electronic monitoring, that does anticipate

22   him leaving the home for work?

23           THE COURT:  Oh, sure.

24           MR. LICHTMAN:  OK.

25           THE COURT:  Sure.  It would be to leave the home for

G2bdlics
Sentence

1    work, religious services, and any other reasons approved by the

2    Probation Department.

3            MR. LICHTMAN:  And I would obviously want that to

4    include all of his volunteering work and whatnot, actually also

5    impact the community service that you've imposed also.

6            THE COURT:  Well, obviously for community service and

7    volunteer services.

8            MR. LICHTMAN:  Thank you, your Honor.

9            THE COURT:  All right.  Before I actually impose the

10   sentence, I'll recognize the defendant for anything you wish to

11   tell me.

12           (Pause)

13           THE DEFENDANT:  Oh, no, your Honor.

14           THE COURT:  OK.  Before I actually impose the

15   sentence, I'll recognize the government for anything the

16   government wishes to tell me.

17           MS. CROWLEY:  Nothing to add.  Thank you.

18           THE COURT:  All right.  Pursuant to the Sentencing

19   Reform Act of 1984, it is the judgment of this Court that the

20   defendant, Don Lichterman, is hereby committed to the custody

21   of the Bureau of Prisons to be imprisoned for a term of time

22   served on Count One.  Upon release from imprisonment, the

23   defendant shall be placed on supervise release for a term of

24   three years.

25           Within 72 hours, the defendant shall report in person

G2bdlics
                          Sentence

1    to the Probation Office in this district.  While on supervised

2    release, the defendant shall comply with the standard

3    conditions of supervised release in this district.  The

4    defendant shall not commit another federal, state or local

5    crime.  The defendant shall not possess a firearm or

6    destructive device, as defined in 18 U.S.C. Section 921.  The

7    defendant shall refrain from any unlawful use or possession of

8    a controlled substance.  The defendant shall submit to one drug

9    test within 15 days of release from imprisonment and at least

10   two periodic drug tests thereafter, as directed by the

11   probation officer.

12          The defendant shall be subject to home confinement for

13   10 months together with electronic monitoring, in accordance

14   with the standard conditions of home confinement and electronic

15   monitoring in this district.

16          Exceptions to electronic monitoring include work,

17   religious services, community service and volunteer service.

18   Home confinement is to begin at a time set by the probation

19   officer.

20          The defendant shall serve 100 hours of community

21   service.

22          The defendant shall cooperate in the collection of

23   DNA, as directed by the probation officer.

24          The defendant shall participate in an outpatient

25   mental health treatment program approved by the United States

G2bdlics
Sentence

1    Probation Office.

2           The defendant shall continue to take any prescribed

3    medications unless otherwise instructed by the healthcare

4    provider.

5           The defendant shall contribute to the cost of services

6    rendered based on the defendant's ability to pay and

7    availability of third-party payments.  The Court authorizes the

8    release of available psychological and psychiatric evaluations

9    and reports, including the presentence investigative report, to

10   the healthcare provider.

11          The defendant shall comply with the conditions of

12   location monitoring for a period of 10 months, which program

13   may include electronic monitoring or voice identification.

14   During this period, the defendant will remain at his place of

15   residence except for employment, religious services, community

16   service and volunteer service and other activity approved by

17   the probation officer.

18          The defendant will maintain a telephone at his place

19   of residence without Call Forwarding, a modem, Caller ID, Call

20   Waiting or portable cordless telephones for the above period.

21          Location monitoring shall commence on a date to be

22   determined by the probation officer.  Should location

23   monitoring be imposed, the defendant shall pay the cost of

24   location monitoring on a self-payment or copayment basis as

25   directed by the probation officer.

G2bdlics

Sentence

1        The defendant shall pay a fine of $3,000.

2        It is further ordered that the defendant shall pay to

3   the United States a special assessment of $100, which shall be

4   due immediately.

5        I've already explained the reasons for the sentence.

6   Does either counsel know of any legal reason why the sentence

7   should not be imposed as I've so stated it?

8        MS. CROWLEY:  No, your Honor.

9        MR. LICHTMAN:  No, your Honor.

10       THE COURT:  OK.

11       MR. LICHTMAN:  Your Honor, if I could just add one

12  thing?

13       THE COURT:  Sure.

14       MR. LICHTMAN:  Mr. Lichterman is actually located in

15  southern New Jersey, so he'll be visiting a probation officer

16  in south Jersey.

17       THE COURT:  OK.  I think that that's arranged with the

18  Probation Office --

19       MR. LICHTMAN:  Yes.

20       THE COURT:  -- in this district.

21       MR. LICHTMAN:  Yeah.  I think it is already in place,

22  actually, because he has had some contact with probation.  I

23  just wanted your Honor to know and put it on the record that

24  that's where he'll be heading.

25       THE COURT:  That's fine.

G2bdlics
Sentence

1          MR. LICHTMAN:  Thank you.

2          THE COURT:  I've plainly -- I've included 10 months of

3 home confinement.  The Probation Department had also

4 recommended location monitoring for a period of five months.

5 So, I've done location monitoring for 10 months.  The

6 electronic monitoring that goes along with location monitoring

7 appears to be the same electronic monitoring that goes along

8 with home confinement.  So any reason that I shouldn't have

9 both conditions there?

10          MR. LICHTMAN:  I don't see any reason not, your Honor.

11 It's fine.

12          THE COURT:  OK.

13          (Pause)

14          Mr. Fletcher asks if he should check off that the

15 defendant should be monitored in the district of residence --

16 supervised in the district of residence, and that's fine by me.

17          MR. LICHTMAN:  Yes, your Honor.

18          THE COURT:  OK.  All right.  I've already explained

19 the reasons for the sentence.  Does either counsel know of any

20 legal reason why the sentence should not be imposed as I've so

21 stated it?

22          MS. CROWLEY:  No, your Honor.

23          MR. LICHTMAN:  No, your Honor.

24          THE COURT:  All right.  I'll order the sentence to be

25 imposed as I've so stated it.

G2bdlics
                            Sentence

1          There is a waiver of the right to appeal, yes?

2          MS. CROWLEY:  Yes, your Honor.

3          MR. LICHTMAN:  Yes, your Honor.

4          THE COURT:  Does either counsel know of any legal

5    reason why the waiver is not effective?

6          MS. CROWLEY:  No, your Honor.

7          MR. LICHTMAN:  No, your Honor.

8          THE COURT:  All right.  Mr. Lichterman, the reason

9    that I ask these questions is that generally a defendant has

10   the right to appeal the sentence.  The notice of appeal must be

11   filed within 14 days after the entry of the judgment of

12   conviction.  The judgment of conviction is entered promptly

13   after the judge announces the sentence.  If the defendant

14   cannot pay the cost of appeal, the defendant has the right to

15   apply for leave to appeal in forma pauperis.  If the defendant

16   requests, the Clerk will prepare and file a notice of appeal on

17   the defendant's behalf immediately.  And the rules require that

18   a judge inform a defendant of this right to appeal.

19          In this case, the parties advise that you have given

20   up, or waived, your right to appeal, and I'm confident that

21   when I took your plea I went over with you the waiver of the

22   right to appeal.  So, it appears that you have given up, or

23   waived, your right to appeal.  I go over this with you now

24   because I want to make sure that you talk about this issue with

25   your lawyer so that you are fully informed of all of your

G2bdlics
                              Sentence

1    rights.

2              Do you understand what I've said?

3              THE DEFENDANT:  Yes, your Honor.

4              THE COURT:  All right.  Open counts?

5              MS. CROWLEY:  There are no open counts, your Honor.

6              THE COURT:  Would the government just as a matter of

7    prudence move to dismiss any open counts?

8              MS. CROWLEY:  Certainly.  The government moves to

9    dismiss any open counts to the extent they exist.

10             THE COURT:  OK.  Defense agrees?

11             MR. LICHTMAN:  Yes, your Honor.

12             THE COURT:  Any open counts dismissed on the motion of

13   the government.

14             OK.  Anything else?

15             MS. CROWLEY:  Nothing from the government.

16             MR. LICHTMAN:  Nothing from the defense, your Honor.

17             THE COURT:  OK.  Good afternoon, all.

18             MS. CROWLEY:  Thank you, your Honor.

19             MR. LICHTMAN:  Thank you.

20

21                              -   -   -

22

23

24

25